Samuel J. Silverman, S.
This is a motion to dismiss a petition for original probate, for lack of jurisdiction, both as a matter of law and in the exercise of the.court’s discretion.
Decedent died in New Hampshire. Decedent was a nonresident of New York. The proponent-executrix, decedent’s widow, contends that decedent was and that she is a domiciliary of Vermont and that decedent was a citizen of the United States. The moving party, decedent’s daughter, contends that decedent was a domiciliary of Zurich, Switzerland and that he had dual *913 nationality being a citizen both of the United States and of Switzerland. The moving party is herself a domiciliary of Spain.
It is claimed that 90% of the assets of the estate are in a custody account in New York. There are some assets both in Switzerland and in Vermont including a house in Vermont and an apartment in Zurich.
The propounded will was executed in New York and contains a clause directing that the construction of the will and the administration of the estate shall be governed by the laws of the State of New York.
Two of the three subscribing witnesses to the will were stated in the will to be residents of New York and the third a resident of New Jersey. The substituted executors named in the will (one of them the attorney who drew the will) are apparently residents of New York.
So far as appears, no probate proceeding or other proceeding for the administration of decedent’s estate is pending in Switzerland or Vermont or anywhere but in New York.
In these circumstances, I think the motion to dismiss the petition for probate for lack of jurisdiction should be denied without the necessity of determining whether decedent was a domiciliary or national of Switzerland.
1. On the face of the statutes, this court has discretionary jurisdiction. Section 45 of the Surrogate’s Court Act provides: “ The surrogate’s court of each county has jurisdiction, exclusive of every other surrogate’s court, to take the proof of a will * * * in either of the following cases: * * *
3. Where the decedent, not being a resident of the state, died without the state, leaving personal property within that county, and no other ’ ’.
Section 23 of the Decedent Estate Law provides: “A will of real or personal property, executed as prescribed by the laws of the state, or a will of real or personal property executed without the state in the mode prescribed by the law, either of the place where executed or of the testator’s domicile, provided such will is in writing and subscribed by the testator, may be admitted to probate in this state. ’ ’
Section 47 of the Decedent Estate Law provides: ‘1 "Whenever a decedent, being a citizen of the United States or a citizen or a subject of a foreign country, wherever resident, shall have declared in his will and testament that ho elects that such testamentary dispositions shall be construed and regulated by the laws of this state, the validity and effect of such dispositions shall be determined by such laws. ’ ’
*914 2. I think this is an appropriate case for this court to exercise its discretion in favor of retaining jurisdiction.
a. There is a practical problem here of administration and disposition of assets that are in New York. No party has instituted any proceedings in any other jurisdiction to administer the estate. To dismiss this proceeding would mean remitting the parties to long-drawn jurisdictional fights in other jurisdictions, which have not even been commenced yet, without the commencement of the administration of the New York assets.
b. The general rule as to the exercise of the court’s discretion was thus stated in Matter of Connell (221 N. Y. 190,195 [1917]): “ where a petition is presented by a person interested in the estate showing the death of a non-resident, the execution of the will and the presence of personal property within the surrogate’s jurisdiction, it is the duty of the surrogate to admit such will, if properly executed, to probate in this state, unless it also appears that such will has been duly admitted to probate elsewhere. The burden of showing such fact is upon the party objecting to the probate.”
In Matter of McCullough (129 Misc. 113, 115 [1926]) Surrogate Foley said: “It is the .settled law of this State * * * that the surrogate has jurisdiction, and it is his duty to proceed with the probate of a non-resident’s will of personal property executed as required by section 21 of the Decedent Estate Law without waiting action by the corresponding tribunal of the domiciliary State.”
Further elaborating on this rule, Surrogate Foley said in Matter of James (167 Misc. 142,144 [1938], affd. 254 App. Div. 723 [1938]): “Cases may arise where the discretion of the surrogate may be exercised by the denial of an application for original probate in his court * * * but persuasive reasons must be presented to justify the transmission of the testamentary instrument to the State of domicile for disposition there. ’ ’
Matter of Lamborn (168 Misc. 504 [1938], affd. 255 App. Div. 755 [1938], affd. 280 N. Y. 504 [1939]) is a case in which this court declined to exercise jurisdiction of an original probate of the will of a nonresident leaving personal property in the State. But in his discussion Surrogate Foley indicates as circumstances which would lead the court to entertain jurisdiction, the following (p. 510)“ In other cases the will itself indicates an intention on the part of the testator to have the administration conducted in New York or under its laws. (Matter of James, 167 Misc. 142, affd. 254 App. Div. 723.) In some cases the will has been drafted and executed in this State. In certain *915 estates all or a great majority of the property may he located here.”- Surrogate Fobey in the Lamborn case recognized the importance of the rule that the courts of our State may refuse to entertain jurisdiction of litigation where none of the parties is a resident of New York (p. 510). But I read this as meaning in the absence of the other circumstances to which I have referred.
On the facts of this case, therefore,— except for the treaty with Switzerland discussed below — it would appear to be the well-established policy of the courts of this State to entertain jurisdiction of the probate proceeding.
3. On the assumption that decedent died a domiciliary of Switzerland, the moving party relies heavily upon a provision of the Swiss-United States Treaty of 1850, article VI, which reads: ‘ ‘ Any controversy that may arise among the claimants to the same succession, as to whom the property shall belong, shall be decided according to the laws and by the judges of the country in which the property is situated. ’ ’ (2 Malloy, Treaties, Conventions, etc., p. 1763.)
Whether or not decedent died a domiciliary of Switzerland, I do not believe that this provision precludes the court’s exercise of jurisdiction or requires it to try out the issue of domicile in connection with jurisdiction.
a. The history and interpretation of this treaty provision is extremely unclear.
b. To begin with, the moving party concedes that this provision is not to be read literally; that “ the country in which the property is situated ” means the country of which the decedent is a domiciliary. And so the Court of Appeals has held {Matter of Rougeron, 17 N Y 2d 264 [1966]).
c. It is not at all clear that the treaty was intended to do more than to restate the general rules of conflict of laws with respect to the jurisdiction of a State over the estates of its domiciliaries. Thus, in Matter of Schneider (198 Misc. 1017, 1025 [1950]) Surrogate Frankenthaler said with respect to article VI: “ Insofar as that article attempts to define the jurisdiction of the several courts and refers to the question of applicable law, it is a generalized declaration of existing principles. It represents a crystallization of extant rules of private international law and protects them from arbitrary unilateral alteration by providing a formal statement of those principles.”
And in Matter of Prince (49 Misc 2d 219,222 [1964]) Surrogate Cox said as to this provision: “ From any viewpoint the language of the treaty cannot be considered as restrictive or designed to take away the existing rights of an American citizen *916 to • freely dispose of his property in the 'United Slates, Jt affirmatively assures an American citizen while domiciled in Switzerland of equality of treatment with Swiss nationals, confirms his right to dispose of even his property located in Switzerland by testament or otherwise and expressly provides that the law of the situs is to prevail in any controversy as to the succession of his property. There is no language in the treaty that would indicate it was to have any extraterritorial effect which would extend its application to an American citizen’s personality located in New York. Only by stretching the domiciliary rule to unreasonable limits can it be found that this decedent’s personal property in New York was subject to the Swiss laws of succession.”
d. "With respect to probate jurisdiction, I doubt that the treaty means more than that there shall prevail between Swizerland and the United States the established rule of comity — that when the domiciliary State actually assumes jurisdiction, the nondomiciliary State will not interfere. This rule of comity prevails as between New York and sister States of the American union. (Matter of Leonori, 130 Misc. 499, 500 [Surrogate’s Ct., N. Y., 1927]; Matter of Wolf, 144 Misc. 256, 259 [Surrogate’s Ct., N. Y., 1932]). The object of the contracting nations being presumably to secure within each State equality of treatment for the foreigners within its borders with its own nationals, it seems unlikely that Switzerland and the United States intended to contract for greater comity and deference to be paid by an American State to the Swiss courts then it would pay to a sister State of the American union. Nor has there been any suggestion of any reason why the contracting nations should have meant to put estates of Swiss domiciliaries in a special position different from that of domiciliaries and nationals of other countries with whom the United States is on friendly terms. (Cf. Wyatt v. Fulrath, 16 N Y 2d 169, 173; Matter of Connell, 221 N. Y. 190 [1917, supra]; Matter of McCullough, 129 Misc. 113 [Surrogate’s Ct., N. Y., 1926, supra].)
Accordingly the motion to dismiss the petition for probate for lack of jurisdiction is denied.
4. The moving party may serve and file any objections to the probate of the will within 10 days after service of a copy of the order entered hereon. (Cf. Matter of James, 167 Misc. 142, 144 [1938], affd. 254 App. Div. 723 [1938].)