OPINION OF THE COURT
Millard L. Midonick, S.
This motion by the decedent’s son, who is a resident of California, for an order dismissing the pending proceeding to probate his mother’s so-called "New York will” raises an interesting question of jurisdiction. Movant disputes the jurisdiction of this court to probate the will of a nondomiciliary which requests New York probate and invokes New York law on the ground that her French domicile has assumed jurisdiction over her estate. The motion is opposed by the petitioners in the probate proceeding, the coexecutors named in this will, who are presently serving as preliminary executors.
The testatrix was born a French citizen in 1899, and in 1965 she became a naturalized United States citizen. She was a New York domiciliary for about 30 years. From approximately 1941 until 1948 she was employed in the law offices of Sullivan & Cromwell in New York City. During this period she worked as secretary to one of that firm’s senior partners, *349 William Nelson Cromwell. A lawyer-client relationship with that firm also commenced during that time. The French "ordinary residence card” issued on February 16, 1973 indicates that the decedent stated that she returned to France on October 24, 1971.
The "New York will” which is the subject of the jurisdictional attack in this motion was drafted by Sullivan & Cromwell. It was purportedly executed by the decedent in Sullivan & Cromwell’s Paris office on June 20, 1972, and there is no challenge on this point, at least at this time. Both the petitioners and the movant refer to this 1972 document as the "New York will”. Both sides seemingly agree that this instrument, whether admitted to probate in New York or established in accordance with French law, governs at most the property of decedent which was physically located here in New York when she died, and that it does not affect property actually located in France, which passes under the so-called "French will” discussed below.
The assets of the decedent located in New York when she died on August 3, 1978 and which she was apparently content to have remain in New York despite the fact that she moved to France in 1971 consisted of bank accounts and a brokerage account. At the time of her death the value of this New York property exceeded $320,000. The property located in France when she died consisted of an interest in real property, to wit her apartment, and the personal property in the apartment. The value of this French property is disputed; petitioners contend that its value is approximately $75,000 while the movant’s position on oral argument was that it might be worth as much as $150,000.
On December 15, 1977 the decedent executed the document which the parties call the "French will”. It is undisputed that the French will has been established in France in conformity with French practice. On oral argument counsel for the movant stated that the New York will was in the process of being established in France and it appears from documents subsequently filed with the court that this has occurred although, for the reasons discussed later in this opinion, this fact is not essential to the resolution of the issue at hand.
In outline form, the provisions of these two wills are as follows: The first paragraph of the 1972 New York will contains the crucial language for purposes of this motion. It recites decedent’s residence as being in Paris, France and then *350 provides: "I hereby declare that I elect that this Will shall be admitted to original probate in the State of New York and shall be construed and regulated by the laws of the State of New York, and that the validity and effect thereof shall be determined by such laws.” The dispositive provisions are simple. In Article second the decedent gives a life interest in her apartment at No. 25 rue Jasmin, in Paris, to her friend Yvonne Daumarie, if then living, or, if the friend predeceased her, which occurred, the apartment passes to the decedent’s "adopted son”, the movant herein. Under Article third all personal and household effects, etc. other than those disposed of in connection with the apartment in Article second are bequeathed to the said Yvonne Daumarie, or if she is not then living, to the decedent’s friend Madeleine Cheyrou-Lagreze, who is concededly a French resident.
In Article fifth, the entire residuary estate is bequeathed in trust for the benefit of the aforesaid Yvonne Daumarie for life and upon her deáth, or upon the decedent’s death, if said friend should predecease her as she did, the residue is disposed of as follows: $5,000 to my "adopted son” the movant herein; $5,000 to a godchild in England; $10,000 to the decedent’s friend Madeleine Regnier, a French resident; and the balance to be divided between the aforesaid Madeleine Cheyrou-Lagreze and a French "mutual aid society”, the Societe d’ Entraide des Membres de la Legion d’Honneur. The nominated executors and trustees are "my friend, Arthur H. Dean and the Bank of New York.” Arthur H. Dean is a member of Sullivan & Cromwell. As a substitute or successor executor for him, decedent named "my friend, Mary Marden Dean, of Oyster Bay, New York.”
The final article of the New York will contains an in terrorem clause providing for the lapse of any provision made in the will for any person named as a beneficiary who "shall contest or file objections to the admission to probate of this my will”.
Just as the New York will comports with our approach to the devolution of property and the administration of estates, the 1977 French will presumably reflects the practice in that country. The decedent simply appoints "as my residuary legatee” Madeleine Cheyrou-Lagreze "on condition that she performs the special legacy which is set forth hereinafter”. The special legacy is a bequest of the apartment at No. 25 rue Jasmin and its contents to the decedent’s "adoptive son”, the *351 movant. On its face this provision is congruent with the terms of Article second in the New York will which were to become operative in case the decedent’s friend, Yvonne Daumarie, predeceased her as she did.
There are two other relevant provisions in this instrument. One is the specification that: "The provisions of Article 843, paragraph 2, of the Civil Code notwithstanding, such legacy is not made as an excess portion of inheritance and outside a share. As a consequence of the foregoing, my adoptive son will only be able to claim it as taking less than a share.” The other is the final paragraph: "I do hereby revoke any other previous provisions, with the exception of those which are contained in my American will, bearing the date of the twentieth day of June 1972, which has been deposited with the Office of Messrs. Sullivan and Cromwell, at 25 Broad Street, in New York City, United States of America, unless such provisions would be contrary to this will.”
Ostensibly this motion is directed to the court’s jurisdiction. It is cast in terms of the efficiency of administration and the reduction of expense which movant alleges would result from deferring to France and declining jurisdiction. The essential issue here, however, is much more related to the movant’s putative forced heirship claim. The affidavit of movant’s California counsel in support of this motion avers that he was informed that under French law the movant is entitled, as the decedent’s child, to one-half of her estate. While the movant’s brief acknowledges that the possibility that French law might be found applicable to his claim to a share of the assets located in this State is no ground for the denial of jurisdiction here, quoting the Court of Appeals opinion in Matter of Steel (31 NY2d 758), it seems clear that the desire to assert this forced heirship claim in the French courts provides the impetus for the instant motion. Similarly, some of the force of the executors’ opposition here is presumably fueled by the obverse of this position.
Putting aside the forced heirship issue temporarily for the purpose of analyzing the other relevant factors, the logical starting place is the statute conferring the authority to probate the will of a nondomiciliary.
By virtue of the revision of the laws of New York pertaining to estates in 1966, the jurisdiction of this court to probate the will of a nondomiciliary is set forth in SCPA 1605 which is entitled "original probate”. SCPA 1605 (subd 1) *352 embodies the general rule that the will of a nondomiciliary may be admitted to probate "in the same manner as any other will” when it "may operate upon any property in this state”. SCPA 1605 (subd 2) contains an exception to the general rule together with an exception to that exception, both of which are relevant here: the exception is that a will which has been admitted to probate or established at the domicile "shall not thereafter be admitted to original probate” here, but the exception to This exception, which is contained in paragraph (b) is the case "where the testator has directed in such will that it shall be offered for probate in this state”.
In the cases where the will of a nondomiciliary which is offered for probate in New York has not been admitted to probate or established at the decedent’s domicile, the court must consider what weight should be given to the fact that the domicile had actually assumed jurisdiction over the decedent’s estate (as was the case in Matter of Heller-Baghero, 26 NY2d 337, infra, where decedent’s prior will had been established at his domicile). The rule of comity is said to favor deference to the domicile in such a case, and the question is what weight is to be accorded this rule and to the preference for unitary administration of estates. These are the very factors which bear upon the exercise of the court’s discretion in a case like the one at hand where the will has been admitted to probate or established at the testator’s domicile but original probate may lie here because the testator "has directed in such will that it be offered for probate in this state”. Thus the factors bearing upon the exercise of the court’s discretion here are substantially the same regardless of whether the New York will has already been established in France or whether this process is still pending. We may thus assume for purposes of this motion that the New York will has already been established in France.
The statutory language in SCPA 1605 (subd 2) authorizing probate in such a case when there is a direction in the will that it be offered for probate in New York, was new with the laws of 1966. The Reviser’s Notes (McKinney’s Cons Laws of NY, Book 58A, SCPA 1605, p 632) indicate that the remainder of SCPA 1605, that is, subdivisions 1 and 3 (subd 3 is not here relevant) largely parallels the Uniform Probate of Foreign Wills Act. "Subdivision 2 is new. It is intended to permit regional probate of the will of a non-domiciliary in any of the 3 cases provided.” The other two situations in which SCPA *353 1605 (subd 2) provides authority for original probate, despite the fact that a will has been probated or established at the domicile, are not particularly significant here — paragraph (a) covers the situation where ancillary probate would be an undue hardship, and paragraph (c) deals with the case where the laws of the testator’s domicile discriminate against New York domiciliaries either as beneficiaries or fiduciaries.
Prior to the enactment of SCPA 1605 (subd 2) there were no decisions sanctioning a departure from the then applicable rule that original probate would not lie in the case of a will which had been admitted to probate at the domicile. (See Powers, Practice Commentary, McKinney’s Cons Laws of NY, Book 58A, SCPA C1605, p 632.) The source of the exception in SCPA 1605 (subd 2) is the recommendation by the Bennett Commission that there be such an exception for the three instances incorporated in the present statute, i.e., where ancillary probate would be unduly expensive, inconvenient or impossible, where the testator directed probate in New York and where the domicile discriminates against New Yorkers. (Fifth Report of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, NY Legis Doc, 1966, No. 19, p 49 [hereinafter cited as the Bennett Commission Report].)
Underlying the commission’s recommendation is the staff report to the commission (No. 8.3.9A) on "Administration in New York of Estates of Non-Domiciliaries” which recommended the revision of the law to confer "explicit permission for original probate of a foreign will even though it was admitted to probate at the domicile: e.g., a case where original probate would be less expensive than ancillary probate.” (Bennett Commission Report. NY Legis Doc, 1966, No. 19, p 579.)
Professor Powers’ Practice Commentary (McKinney’s Cons Laws of NY, Book 58A, SCPA C1605, p 632) report that the three exceptions in subdivision 2 "are derived largely from suggestions by experienced New York probate practitioners.” His commentary contains interesting illustrations of some of the situations which that subdivision was intended to cover: "Section 1605 codifies the general rule that a will duly admitted to probate at the domicile of the testator shall not be admitted to original probate here, but it sets forth exceptions in three paragraphs of subdivision 2. A state of war, massive destruction of records by bombing, or organized persecution of *354 or discrimination against minorities may make it difficult, expensive or even impossible to obtain official records, but original probate may be possible. A testator may explicitly direct probate in this jurisdiction but the law of his own domicile may make it necessary ñrst to prove the will there. The laws of another State or a foreign country may so discriminate against non-residents of that place that the testator’s estate can be administered in accordance with his will only if original probate be allowed here.” (Emphasis added.)
The leading case in this area is Matter of Heller-Baghero (26 NY2d 337, supra). This case did not involve subdivision 2 because the will offered for probate in New York had not been established in the decedent’s domicile, which was Austria, but the competing considerations weighed in that case are in point here because an earlier will had been established in Austria. The thrust of the principle of comity favored deference to the domicile once its jurisdiction had been invoked in the interest of orderliness and uniform probate disposition. These are the same policy considerations which must be weighed in determining whether to entertain jurisdiction under SCPA 1605 (subd 2, par [b]). In both situations the fact that jurisdiction has already been asserted at the domicile requires a careful consideration before original probate will be permitted in this court. (See Powers, Supplementary Practice Commentary, 1970, McKinney’s Cons Laws of NY, Book 58A, SCPA, C1605.)
Matter of Heller-Baghero (supra) held that the facts in that case warranted the Surrogate’s exercise of his discretion to entertain jurisdiction although they certainly did not compel it. The facts justifying the entertainment of jurisdiction were (p 345): (a) The relative substantiality of the New York assets. In that estate 90% of the decedent’s assets were actually located in New York, (b) The executor named in the will proffered for probate in New York was a New York resident as was one legatee. The other legatee resided at the testator’s domicile in Austria, (c) The court characterized as "most significant” a letter with respect to Austrian law which indicated the proof of the latter will in Austria would entail extensive litigation. It was "only natural” in the view of the Court of Appeals that the executors would choose to litigate the issue here even at the cost of possibly forfeiting the property in Austria rather than litigate there, (d) The probate proceeding in New York was brought in good faith without *355 the intention of thwarting Austrian law "which must be applied in any event”.
While Heller-Baghero sustained the Surrogate’s exercise of his discretion to entertain jurisdiction as justified by the facts although not compulsory, in Matter of Goldstein (34 AD2d 764) the Appellate Division found that the Surrogate was required to entertain jurisdiction. There the Surrogate had apparently conditioned jurisdiction on a finding of New York domicile. The Appellate Division reversed, holding that the decedent’s will was entitled to probate in this State both as a matter of law and in the exercise of discretion even if he were a Florida domiciliary in view of the following circumstances: all of the decedent’s assets were actually located in New York State, the will was drafted by a New York lawyer, executed in New York, witnessed by New York residents and was not probated elsewhere (there was no language in the will directing probate in New York), the distributees all lived in New York State, the decedent’s spouse and two of the three adult legatees preferred New York probate, the party objecting to the court’s jurisdiction spoke only for one-seventh of the residuary estate and the named fiduciaries would have been disqualified from acting at the domicile.
Clearly one of the important factors bearing on the exercise of this court’s discretion to entertain jurisdiction over a non-domiciliary’s will under these cases is the fact that the assets actually located in this State constitute a very substantial portion of the decedent’s estate. (See Matter of Vischer, 53 Misc 2d 912.) The weight of this factor is also emphasized by the decisions in which the court exercises its discretion to decline jurisdiction. (Matter of Oakley, NYLJ, March 29, 1978, p 17, col 6; Matter of Brunner, 72 Misc 2d 826; Matter of Wolf, 144 Misc 256.)
In Matter of Brunner (supra) the testator, who was ultimately held to have been a French domiciliary (Matter of Brunner, 51 AD2d 995, affd 41 NY2d 917), executed a will in New York while he was here on a business trip. He had been a successful businessman in this State which was his residence before he moved abroad. The will requested New York probate and invoked New York law. About two years later he executed a deed of donation in France which under French law operates as a gift taking effect after death. This deed purported to dispose of the decedent’s entire estate and was thus, on its face, inconsistent with the earlier New York will which was *356 propounded for probate in this court. We granted the motion to dismiss the probate proceeding.
The only assets located in New York at the time of the decedent’s death consisted of less than $1,000 in bank accounts. He left more than $1,000,000 in Switzerland and property worth several hundred thousand dollars in France. There was a proceeding pending in France to determine the validity of the deed of donation which also involved the effect of an alleged antenuptial agreement providing that New York law should apply to the decedent’s testamentary disposition. Both the decedent’s widow and his child, who were the sole beneficiaries of the deed of donation, were domiciled in France and the motion to dismiss the New York probate was made in their behalf. They were also the primary beneficiaries under the will which was executed in New York although that instrument contained other gifts to persons who were United States citizens. The two individual executors and trustees named in the New York will were apparently New York residents.
The decision to decline jurisdiction in Matter of Brunner (supra, pp 829-830) was the product of several elements all pointing toward the domicile: (1) The small proportion of the assets here: "the testator’s insubstantial bank accounts in New York State provide, under these circumstances, an insufficient jurisdictional basis”; (2) the likelihood that this court’s decision would be academic: as a practical matter only an insignificant portion of this decedent’s estate would in all likelihood be affected by the decision of this court since "it is quite likely that the French decision with respect to the huge French assets and the even larger Swiss assets will prevail in Switzerland and France despite any purported decision here”; (3) the importance of the deed of donation in the testamentary scheme if it was valid, and the convenience of litigating that issue in France: the fundamental litigation which was with respect to the decedent’s capacity to make the French deed of donation was far more appropriately conducted in France since the witnesses were there and the litigation was set for an early trial; and (4) the governmental interest of France in the wife and child: it was entirely appropriate for this matter to be disposed of in France which was the jurisdiction charged with the protection of the decedent’s widow and child because they were domiciled there. The decedent had himself removed almost all of his property from New York and under these *357 circumstances it was appropriate to rely on the French courts to give whatever effect was appropriate to the New York will and the invocation of New York law in the antenuptial agreement.
Wholly apart from the movant’s forced heirship claim, the facts in this case militate in favor of retaining jurisdiction. Applying the first yardstick of the Court of Appeals in Matter of Heller-Baghero (26 NY2d 337, supra) there are substantial assets in New York. The New York estate represents 80% of the decedent’s total assets using petitioner’s estimate of the value of the French assets; even accepting movant’s higher valuation of the French assets the New York estate would represent 68%. Like the second factor in that case, the executors named are New York residents: the nominated individual executor is a prominent member of the New York Bar and a member of the law firm with which decedent had an ongoing relationship for many years. The nominated coexecutor is a New York trust company. The third and "most significant” ground was the fact that the proof of the New York will at the domicile in that case would have entailed extensive litigation which the court found "only natural” for the executors to prefer to pursue in New York. An equally compelling reason for preferring the jurisdiction of the New York courts prevails here with regard to the forced heirship issue which will be discussed subsequently in this opinion.
The last factor mentioned in Heller-Baghero, that the New York proceeding was brought by the executors in good faith, without intending to thwart Austrian law which the court said would control in any event, might seem initially to be a test that petitioners here cannot satisfy. However, the facts in that case which gave rise to the enunciation of that test are distinguishable from those before us in a manner which makes the test inapplicable here. In Heller-Baghero the will did not invoke New York law nor request probate here. Since the instant will does so provide, the institution of a proceeding here is not inconsistent with good faith even if it is colored by the desire to "thwart” French law since this was the decedent’s evident intention.
The facts in this estate not only satisfy the Heller-Baghero criteria but can be seen as presenting a stronger case for retaining jurisdiction. The evidence that this was decedent’s intention is clear. The New York will was written after the decedent had moved to France. Despite the apparent inconve *358 nience, she had her will prepared by her New York law firm and directed in its opening paragraph that the will be probated in New York and that New York law apply. There was no such invocation of New York law and jurisdiction in the Heller-Baghero will. Although she moved to France she obviously left the bulk of her estate with her New York banks and broker.
This is not a case like Matter of Brunner (72 Misc 2d 826, supra) where the French instrument, if valid, would have rendered the New York will in effect a nullity. Here the parties are agreed that the scope of operation of the French will is confined to the assets physicially located in that country. Nor would it be academic to adjudicate in this court any issues pertaining to the New York will since, unlike the situation in Brunner, there are very substantial assets in this jurisdiction. Finally, the deference thought fitting in Brunner because France was the domicile of the parties objecting to this court’s jurisdiction combined with the fact that the decedent had removed virtually all of his assets from New York and executed an instrument in his new domicile which on its face was inconsistent with the New York will, is not justified by the facts of this case. The objectant is not domiciled in France.
Turning now to the forced heirship issue, petitioners’ memorandum hypothesizes that the reason the decedent elected New York probate was her desire to bar a forced heirship claim by her son against her New York assets. As indicated above, in the New York will she leaves him two bequests totaling $6,000. Aside from a total of $15,000 bequeathed to two other legatees, the decedent left the balance of her New York estate in equal parts to her friend, Madeleine Cheyrou-Lagreze and a French charity; they would presumably be the persons primarily affected by the successful assertion of a forced heirship claim by the movant. The petitioners have not disputed the possibility that he may have such a claim under French law. The precise legal foundation for such a claim does not appear in the papers. The decedent was a United States citizen at the time of her death although she was domiciled in France which was the country of her birth. The movant is also a United States citizen but it is alleged that he is a French citizen as well.
The residuary beneficiaries were made parties to the probate proceeding but have not appeared. The movant’s papers *359 assert that Madeleine Cheyrou-Lagreze, "the sole party” who would benefit by the application of New York law (by which he presumably means the local law of New York under which no forced heirship claim would lie), has no objection to the application of French law to this estate, but this obviously falls far short of a waiver of her rights under the will. There may be reasons for an individual to prefer not to take an overt adversary position under these circumstances; and, of course, she is not the sole residuary beneficiary.
The disposition of the forced heirship claim on the merits is of course not before us on this motion. It is conceded that the mere fact that such a claim might ultimately be sustained with the inherent invocation of French local law that would be entailed does not prevent this court from entertaining jurisdiction. The proper procedure here once the jurisdictional issue is resolved in favor of retaining jurisdiction and after the court is satisfied with regard to the admissibilty of the will would presumably be the inclusion of a provision in the decree admitting the will restraining the executors from making distribution until the accounting or other resolution of the forced heirship claim. (See Matter of Prince, 49 Misc 2d 219.)
The ultimate outcome of the choice of law issue presented by the movant’s forced heirship claim is not clear. The background for this issue is, of course, EPTL 3-5.1 (subd [h]): "Whenever a testator, not domiciled in this state at the time of death, provides in his will that he elects to have the disposition of his property situated in this state governed by the laws of this state, the intrinsic validity, including the testator’s general capacity, effect, interpretation, revocation or alteration of any such disposition is determined by the local law of this state.” (Emphasis added.) The question presented is whether the provision in the New York will invoking New York law under the authority of this statute operates to bar the forced heirship claim.
Refined further, the issue is whether the decision by the Court of Appeals in Matter of Clark (21 NY2d 478), that similar language in a husband’s will would not bar his widow from asserting her right of election under the law of their Virginia domicile, will be applied to this forced heirship claim. In Matter of Steel (31 NY2d 758, 760, supra) the court seemed to characterize this point as a question which was still unresolved and merited "full consideration”: "In so concluding, we expressly do not reach the question of the applicability of the *360 rule postulated in Matter of Clark * * * to testator’s American will. It therefore remains open to the guardian ad litem, if necessary, to assert the incompetent son’s rights under the French forced heirship law in a subsequent accounting proceeding within the orderly administration of the estate wherein the possible application of the Clark rule * * * can be given full consideration.” (But see Matter of Brunner, 72 Misc 2d 826, 830, supra.) Subsequent events mooted the forced heirship issue by the time the executors filed their accounting in Steel. Additional recognition that the forced heirship issue remains open can be found in the final footnote in Watts v Swiss Bank Corp. (27 NY2d 270, 279): "Of course, if the sisters were not barred from relitigating the issue they could rely, as they do, on cases like Wyatt v. Fulrath, (16 N Y 2d 169, supra) and Hutchison v. Ross (262 N.Y. 381) which allow the application of New York law to assets in this State, otherwise subject to the forced heirship rules of a civil law jurisdiction. In that event the daughter would rely on Matter of Crichton (20 N Y 2d 124) and Matter of Clark (21 N Y 2d 478). On the view taken, the issue may not be reached.”
Were it not for Matter of Clark, the authoritative decision on the forced heirship question would be Matter of Prince (49 Misc 2d 219, 222-223, supra) which held that the testator’s direction that his will be governed by New York law barred the forced heirship claim: "[Tjhe American common law courts have resolved the issue of forced heirship of descendants by generally disregarding restrictions on the testamentary freedom imposed by a domiciliary civil law country. Quite uniformly, forced heirship claims have been denied and the testamentary disposition given effect under the situs law in accordance with the testator’s intention” (Yiannopoulos, Wills of Movables in American International Conflicts Law, 46 Cal L Rev 185, 232).
This was the state of the law considered by the Bennett Commission and not ostensibly changed when section 47 of the Decedent Estate Law was incorporated in this respect into EPTL 3-5.1. Of course, this practice of permitting testators to invoke New York law so as to bar family claims, which this statute seemingly incorporated was not followed by the Court of Appeals in Clark.
The reasoning of Matter of Clark (supra) on this issue, particularly with regard to the interpretation of the word "effect” in EPTL 3-5.1 (subd [h]), has been the subject of *361 significant criticism in an important treatise in the area of decedent’s estates. (9 Rohan, NY Civ Prac, par 3-5.1, subd [7], n 72.) This same treatise questions whether the Court of Appeals will apply Matter of Clark beyond the right of election area. Certainly the traditional interest of the common law in protecting a surviving spouse might warrant superseding the expressed intent of the testator that New York law apply without requiring automatic deference to other policies of the domicile, like forced heirship, which are not in harmony with our local law. Moreover, at the time of the testator’s death in Clark the statutory provisions for the spouse’s right of election had not yet been amended to make this right available to nondomiciliary decedents. Thus it might have been possible for a nondomiciliary testator to transfer assets to New York and invoke New York law without thereby conferring on his surviving spouse the right to an elective share under our local law. Under these circumstances Clark’s deference to the domicile can be regarded as evidencing a policy of protecting the surviving spouse which is consonant with the policy reflected in the local law of New York. This policy is obviously not automatically applicable to a child’s forced heirship claim since our local law does not embody such rights in behalf of surviving children.
Clearly it is the purpose of our statutory scheme to allow nondomiciliaries to elect to have New York law govern the disposition of property actually located here at death. (EPTL 3-5.1, subd [h].) Necessarily inherent in this statute is some deviation from the so-called local law of the testator’s domicile, i.e., the law governing wills and the administration of estates at the domicile. After Matter of Clark (21 NY2d 478, supra) the question is where to draw the line. In this court’s opinion, Clark does not foreclose the possibility that this statute might be interpreted as permitting the testatrix in this case to bar the claim which her son would allegedly have under the local law of France.
Even aside from the point that our traditional interest in protecting the surviving spouse does not extend to the inheritance rights of children, the application of the so-called "paramount interest rule” invoked in Clark does not impel deference to French law here. That choice of law rule looks to the local law of the jurisdiction with a predominant interest in protecting the rights of the living claimant. It is not at all clear that that jurisdiction would be France under the circum *362 stances of this case. In Clark the claimant widow was a resident of Virginia which was also the State of the matrimonial domicile. Similarly, in Brunner the objecting wife and child were French domiciliaries. There is language in Brunner (72 Misc 2d 826, 829-830, supra) which also involved a will invoking New York law implying that the French law of forced heirship would be controlling in that case "since France appears to be their permanent home”.
In the case at hand, the movant is concededly domiciled in California and a citizen of the United States. The only governmental interest attributable to France with regard to him would be an interest in his protection presumably stemming from his claimed French citizenship. As a matter of policy, it is far from clear that this governmental interest is supperior to the interest of New York in effectuating the intention of the testatrix and in implementing the statutory provisions of EPTL 3-5.1 (subd [h]) which permits a testator to invoke New York law to govern the effect of his will.
The testatrix here had a substantial connection with New York where she lived for 30 years. She was employed here and when she moved back to France in 1971, she left her assets here, where they remained during the seven years before she died. One eminent authority in the field of conflict of laws suggests that in a situation such as the present one where both jurisdictions, that is New York and France, have an interest in the application of their local law, the law of the forum should prevail. (Cavers, The Choice of Law Process, p 63.) The ultimate resolution of questions in the area of conflict of the laws in situations where the competing policies are closely balanced is not a matter of rote. There are divers conflicting factors such as the public policy of the forum, the desire for a rule that reflects a consideration for international harmony, a preference for doing justice in the present case (see Cavers, supra), the desire for uniformity of legal results and the protect of justified expectations (Cheatham, Griswold, Reese and Rosenberg, Cases and Materials on Conflict of Laws, p 385 et seq. [5th ed]; Leflar, Choice-Influencing Considerations in Conflicts Law, 41 NYU L Rev 267, 287).
The choice of law issue in this case, that is whether the local law of France or that of New York State admeasures the inheritance rights of the decedent’s son, raises a question of law that has not yet been adjudicated by the highest court of this State. Since there is some likelihood that this issue might *363 be decided in favor of the law of New York, it is entirely appropriate for this court, in the exercise of its discretion, to retain jurisdiction of the probate proceeding herein and permit this issue to be resolved in our courts after the will has been admitted to probate. This conclusion makes it at least possible that the decedent’s evident intent to bar her son and to have the courts of this State pass upon the efficacy of her attempt to do so will be served to the maximum degree possible. No inconvenience is occasioned to the parties since the movant resides in California, not in France. To decline jurisdiction and thus defer to French law the administration of the assets which decedent deliberately left here in New York disserves her evident desire to have a New York lawyer and a New York corporate fiduciary administer her estate, since these executors would presumably have no authority to act under French law. It also seems to this court that the decedent’s attempt to bar her son’s forced heirship claim by invoking New York law would necessarily have a far smaller chance of success in France since the public policy of that forum would militate in his favor. Moreover, the burden of opposing his claim in France would have to be borne by the legatees while this would be the duty of the executors under New York law, which again seems much more consistent with the decedent’s intention.
Motion denied.