Chief Judge Fuld.
This appeal poses an interesting and important question concerning a widow’s right of election to take against her husband’s will. More particularly, may her husband, domiciled in a foreign state, by selecting New York law to regulate his testamentary dispositions, cut off or otherwise affect the more favorable right given his widow to elect by the law of their domicile?
In the case before us, Robert V. Clark, Jr., died in October of 1964, domiciled in Virginia, and there his widow continues to reside. His estate, consisting of property in Virginia and in New York, had an aggregate value of more than $23,000,000— the bulk of which consisted of securities on deposit with a New York bank. His will, made in 1962, contained a provision that ‘ ‘ this Will and the testamentary dispositions in it and the trusts set up shall be construed, regulated and determined by the laws of the State of New York.” It devised the Clark residence in Virginia, together with its contents, to the widow and created for her benefit a preresiduary marital deduction trust — under which she would receive the income for life, with a general testamentary power of appointment over the principal of the trust. The residue of the estate, after payment of estate taxes, was placed in trust for the testator’s mother. There has been a bi-state administration of the estate. The New York executors are administering the major portion of the estate — consisting, as noted, of securities held in New York during Mr. Clark’s lifetime — and the Virginia executors are administering the *482 balance, including the real and tangible personal property located in Virginia.
The testamentary trust for the widow’s benefit would satisfy the requirements of section 18 of our Decedent Estate Law. However, it is conceded that, under the statutes of Virginia, the widow has an absolute and unconditional right to renounce her husband’s will and take her intestate share (in the absence of issue, one half) of his estate outright (Virginia Code, § 64-16) .[1] Timely notice of the widow’s election having been given, the New York executors initiated this special proceeding in the Surrogate ’s Court, pursuant to section 145-a of the New York Surrogate’s Court Act. The petition requests a determination denying the widow any right of election on the grounds that the terms of the will barred her from recourse to Virginia law and that, under New York law, the testamentary provisions in her favor were sufficient. The executors contend that, by declaring that his testamentary dispositions should be construed by the laws of New York, the testator meant to bar his widow from exercising her Virginia right of election and that section 47 of the Decedent Estate Law requires that we give effect to his purpose. That section — replaced, since the testator’s death, by a very similar provision (EPTL 3-5.1, subd. [h])—provided, in essence, that, when a nondomiciliary testator recites in his will that he elects that his “ testamentary dispositions ” shall be construed and regulated by the laws of New York, ‘ ‘ the validity and effect of such dispositions shall be determined by such laws.”[2]
*483 The Surrogate upheld the executors’ position. On appeal, the Appellate Division reversed, deciding that the widow’s right to take in opposition to the will must be determined by the law of the domicile of the parties. Section 47—which relates solely to the decedent’s “ testamentary dispositions ” and their validity and effect—was inapplicable, the court concluded, because “ the right of a widow to inherit despite the will is not a ‘ testamentary disposition ’ in any sense ” but is, on the contrary, “ a restriction on the right to make a testamentary disposition.” (28 A D 2d 57.)
We thoroughly agree with the Appellate Division’s construction of the statute and with the conclusion it reached.
As already appears, section 47 permits a foreign domiciliary to have the validity and effect of his “ testamentary dispositions ” construed and regulated by the laws of this State. A regard for the language of the statute, as well as its legislative history and the policy to be served by it, clearly demonstrates that the words “ testamentary dispositions ” and “ the validity and effect of such dispositions ” do not encompass the right accorded a spouse to elect to take in opposition to the will.
Indeed, our statutes, in terms, draw a distinction between the two concepts, between the decedent’s “ testamentary disposition” and the spouse’s right to elect. Section 145 of the Surrogate’s Court Act (now SOPA 1420)—a statute procedurally related to section 47 — gave the surrogate jurisdiction to determine “ the validity, construction or effect of any disposition of property contained in a will ”.[3] And, in contrast, section 145-a of the Surrogate’s Court Act (now SCPA 1421) gave the court jurisdiction of proceedings for the “ determination as to the validity or effect of any election to take an intestate share against the provisions of a will ”. This latter provision appeared in our law for the first time in 1929 (eff. Sept. 1,1930) as part of the same legislative package which included the first statute creating a right to elect against a will (L. 1929, ch. 229, §§ 4, 9). It is apparent — and highly significant—that the Legislature deemed it necessary to adopt this new procedural section (§ 145-a), despite the long-time presence on the statute books *484 of the above-mentioned provisions empowering the surrogate to determine “ the validity [and] effect of a testamentary disposition ”. It is also significant that the proceeding now before us was brought, and properly so, under section 145-a, dealing with the “ validity or effect of any election ” rather than under section 145 which deals with testamentary dispositions.
The difference between the wording of section 145 and the much more recent section 145-a merely reflects the profound differences, in history and design, between the law of testamentary dispositions, of which section 47 of the Decedent Estate Law is a part, and the law of election to take in opposition to testamentary dispositions, embodied in section 18.
Unlike the expressions of intent which constitute testamentary dispositions, the right of election, both in Virginia and New York, is statutory in nature and exists wholly outside of, and in direct contravention to, the provisions of a will. (See Newman v. Dore, 275 N. Y. 371, 375; Matter of Greenberg, 261 N. Y. 474, 478; First Nat. Exch. Bank v. Hughson, 194 Va. 736; Gentry v. Bailey, 6 Grat. [47 Va.] 594.) As the court noted in Matter of Greenberg (261 N. Y., at p. 478), section 18 of the Decedent Estate Law, when, enacted in 1929, introduced into this State a “ new public policy which no longer permit [ted] a testator to dispose of his property as he please[d].” This being so, it necessarily follows that the widow’s right of election — or, more precisely, its availability or nonavailability—is not a ‘‘ testamentary disposition” whose validity and effect may be controlled by the provisions of a will under section 47. In the words of the Appellate Division, the spouse’s right of election, far from being a testamentary disposition, is a “ restriction on the right [of the decedent] to make [such] a * * * disposition.”
A moment’s reflection is all that is necessary to establish the difference between statutes which have to do with restrictions placed on the decedent’s testamentary power — for instance, to disinherit his spouse or other members of his family — and those which bear on discerning and carrying out the testator’s wishes and desires. Section 47 is an example of the latter sort of legislation. Its earliest version (Code Civ. Pro., § 2694 [L. 1880, ch. 178]) simply reflected the traditional choice of law rules, referring dispositions of personal property to the law of the *485 decedent’s domicile. (See Holmes v. Remsen, 4 Johns. Ch. 461; see, also, Fowler, Decedent Estate Law of New York, 324.) It provided that the ‘ ‘ validity and effect * * * of a testamentary disposition ” of real property were to be regulated by the law of the situs and those of personalty by the law of the domicile; no exception was made for a case in which the testator might express a contrary intent.
Despite this statute, cases decided before (see, e.g., Chamberlain v. Chamberlain, 43 N. Y. 424, 433-434), as well as after (see St. Johns v. Andrews Inst., 191 N. Y. 254, 267; Robb v. Washington & Jefferson Coll., 185 N. Y. 485, 496; Hope v. Brewer, 136 N. Y. 126, 139) its adoption, held that, when personalty had been placed outside the domiciliary jurisdiction, a testamentary disposition of the property which violated (for example) the domicile’s rule against perpetuities or its mortmain statute—the cases dealt almost invariably with charitable bequests—would be given effect if valid under the law where the property was situated. The declared purpose of the courts was, if possible, to give effect to, and not frustrate, the testamentary dispositions; the reasoning underlying these determinations was that perpetuities and mortmain affected only the administration of the property in the hands of the recipient and that, therefore, these questions were of concern only to the situs jurisdiction and not to that of the domicile.
Some years later, in 1911, in apparent recognition of this practice of the courts, section 47 was amended, expressly to permit a nondomiciliary to choose to have his testamentary disposition of his property regulated by New York law (L. 1911, ch. 244). The distinction between the decedent’s “ testamentary disposition” and the spouse’s right of election, as well as the inapplicability of section 47 to the present case, is pointed up by the fact that, when this amendment to section 47 was adopted, New York’s first right of election statute was still some 18 years in the future (Decedent Estate Law, §18 [L. 1929, ch. 229, §4]).
Moreover, consideration of general principles of choice of law serve to confirm the conclusion, at which we have arrived, that it is the law of Virginia as to the widow’s right of election, not that of New York, which here controls. As between two *486 states, the law of that one which has the predominant, if not the sole, interest in the protection and regulation of the rights of the person or persons involved should, of course, be invoked. (See Matter of Crichton, 20 N Y 2d 124,134; Downs v. American Mut. Liab. Ins. Co., 14 N Y 2d 266, 271; Babcock v. Jackson, 12 N Y 2d 473.) Matter of Crichton (20 N Y 2d 124, supra) is illustrative. A domiciliary of New York had placed his personal property in a state (Louisiana) which had a very different method of protecting a surviving spouse. In deciding that the law of the domicile ought to be applied, our court noted that Louisiana had no ‘ ‘ interest in protecting and regulating the rights of married persons residing and domiciled in New York.” On the contrary, we declared, “New York, as the domicile of Martha and Powell Crichton, has not only the dominant interest in the application of its law and policy but the only interest ” (20 N Y 2d, at p. 134).
Although a declaration contained in a will that its law was to control might give a foreign state an interest in the application of its law that it would otherwise lack, this interest would not extend to a matter, such as the right of election, which is completely unrelated to, and indeed in contravention of, the decedent’s intent. Thus, in the Crichton case, the court made it exceeding plain that such a declaration would not be given any effect, if to do so would be to “ avoid the New York statutory provision for the protection of the surviving spouse ” (20 N Y 2d, at p. 137, n. 10). But, urge the appellants before us, even if a testator domiciled in New York could not avoid his spouse’s right of election in that way, this State’s interest in encouraging nonresidents to invest their funds here ought to be given effect, even at the expense of the rights given to a surviving spouse by the law of the domicile of the decedent and his widow. The authorities upon which they rely, however, fail to support such a proposition.
In Wyatt v. Fulrath (16 N Y 2d 169) and Hutchison v. Ross (262 N. Y. 381) we permitted nondomiciliaries to make dispositions of property located here which would have violated the public policy of their domicile, and it is asserted that a similar result should be reached in this case. Hutchison and Wyatt, however, are inapposite; both involved inter vivos transactions *487 between, husband and wife. Such inter vivos dispositions, unlike the unilateral provisions of a will, have traditionally been upheld if permitted under the law of place where the property was located. (See James v. Powell, 19 N Y 2d 249, 256; Weissman v. Banque de Bruxelles, 254 N. Y. 488, 494; see, also, Restatement, Conflict of Laws, §§ 255-257.)[4]
Indeed, in the Hutchison case (262 N. Y. 381, 391, supra), this court specifically referred to the distinction drawn between inter vivos and testamentary dispositions. After noting that “ The rules that both the capacity to make a valid conveyance of tangible chattels and securities and the essential validity of such conveyance are determined by the law of the state where chattel is situated * * * have been generally applied to conveyances inter vivos ”, the court went on to say that “ [t]hey are not generally applied to passage of title by will or the intestacy of a decedent owner. With possible limitations, not relevant to the question here presented [cases cited], the rule is well established that the essential validity of a testamentary trust must be determined by the law of the decedent’s domicile ” (p. 391).
In point of fact, recent legislative changes serve to confirm our conclusion that a widow of a nondomiciliary cannot be deprived of the right of election given to her by the law of the jurisdiction in which she and her husband were domiciled. In 1965, the Legislature undertook a thorough re-evaluation of the law governing rights of election in this State and, as a result, adopted section 18-b of the Decedent Estate Law, to take effect September 1, 1966. The new section explicitly provided (subd. 4) that the New York provisions “ shall not be available to the spouse of a decedent who at the time of his death was not domiciled in this state.” In 1966, that same rule was restated as subdivision 6 of section 18-c and, again, *488 as section 5-1.1 of the new Estates Powers and Trusts Law which was to go into effect the following year. Thus, three successive legislative enactments had specifically provided that, regardless of any expression of intent, the spouse of a nondomiciliary was not entitled to exercise a right of election under New York law. The purpose of the provision was undoubtedly to insure that the spouse’s rights were to be determined by the law of the domicile (Fourth Report of Temporary State Commission on Estates, N. Y. Legis. Doc., 1965, No. 19, pp. 150-151). This was considered necessary to achieve uniformity between the law which had been applied to real property and the existing law as to personal property which the commission found, ‘ ‘ under established rules, is governed by the law of the decedent’s domicile ” (pp. 150-151).
However, effective September 1, 1967, the spouse of a non-domiciliary was given an additional right; section 5-1.1 (subd. [d], par. [6]) of the new Estates Powers and Trusts Law was amended (L. 1967, ch. 686, § 39) to give to the surviving spouse the opportunity to elect against the will under New York law where the testator made an election to have his testamentary dispositions governed by New York law. “ The right of election granted by this section ’’, the amended provision reads, ‘‘ is not available to the spouse of a decedent who was not domiciled in this state at the time of death, unless such decedent elects, under paragraph (h) of 3-5.1 [formerly Decedent Estate Law, § 47], to have the disposition of his property governed by the laws of this state. ’’
The effect of this provision, quite obviously, was to render the New York right of election “ available” — that is, afford an opportunity—to a nondomiciliary to elect the New York right of election where, under prior law, she would have been limited to her rights under .the law of the domicile. It was consistent with the policy of uniformity since, where a testator had declared that his will should be governed by the law of a foreign jurisdiction, no interest of the domicile would be prejudiced by extending .to the surviving spouse the greater protections which New York law might provide. (See Scoles, Conflict of Laws and Elections in Administration of Decedents’ Estates, 30 Ind. L. J. 293, 307.) Be that as it may, though, the statute was certainly *489 not intended to deprive her of any rights afforded by the domicile in a case such as this, where it would provide her with a greater protection than the law of New York. On the contrary, as we have already observed, the amended statute extends an additional protection which she would not otherwise have had. In short, the statute manifests a strong legislative policy to limit the testator’s power to deprive his spouse of support; it is designed to complement, not to frustrate, the policies of sister states directed toward the same end.
While Virginia, as well as New York, has demonstrated concern for surviving spouses, the two states have done so in substantially different ways. A right to the income of a trust, sufficient under our law (Decedent Estate Law, § 18), is by no means the equivalent of taking the principal outright as would be the widow’s right upon her election under Virginia law. Whether the widow in the case before us would be adequately provided for under the will or our own law is irrelevant, for the same principles must apply to an estate of $23,000 as to one of $23,000,000, and we reject the notion that New York ought to impose upon its sister states its own views as to the adequacy of a surviving spouse’s share.
In sum, Virginia’s overwhelming interest in the protection of surviving spouses domiciled there demands that we apply its law to give the widow in this case the right of election provided for her under that law. We find nothing in section 47 of the Decedent Estate Law or in the public policy of New York which would permit a decedent, by a mere expression of intent, to change this result.
The order appealed from should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.
Judges Burke, Scileppi, Bergan, Breitel and Jasen concur; Judge Keating taking no part.
Order affirmed.

. In contrast, the New York right of election statute, in effect at the time of this testator’s death (Decedent Estate Law, § 18), permits a decedent to defeat his spouse’s right by creating a trust of the requisite size for her benefit and giving her the net income therefrom for life.

. Section 47 read, in somewhat greater detail, as follows: “ The validity and effect of a testamentary disposition of real property, situated within the state * * * are regulated by laws of the state, without regard to the residence of the decedent. Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property * * * are regulated by the laws of the state or country, of which the decedent was a resident, at the time of his death. Whenever a decedent, being a citizen of the United States or a citizen or subject of a foreign country, wherever resident, shall have declared in his will that he elects that such testamentary dispositions shall be construed and regulated by the laws of this state, the validity and effect of such dispositions shall be determined by such laws.” (Emphasis supplied.)

. Similar wording also appears in the predecessors of section 47 (Code Civ. Pro., § 2694, as added by L. 1880, ch. 178) and of section 145 of the Surrogate’s Court Act (L. 1870, ch. 359, § 11).

. Contrary to the appellants’ contention, our decision in the Wyatt case (16 N Y 2d 169, supra) may not be read as authority for the proposition that a decedent may unilaterally reduce or impair the spouse’s right to the share of his estate assured her by the law of their domicile. Since in Wyatt the respective heirs of both husband and wife were the same persons, they could have received their full “ forced shares ” in the property as provided for under the law of the domicile (Spain), regardless of the validity of the inter vivos transfers — the sole issue, we note, with which we were concerned.