OPINION OF THE COURT
Louis D. Laurino, S.
Application for leave to settle and compromise the cause of action for decedent’s wrongful death and to judicially settle the account relating to the proceeds thereof is granted.
*354 The net proceeds of the settlement herein are to be distributed to a surviving widow and seven infant children between the ages of 2 and 12. The petition for letters of administration shows decedent’s domicile and that of his petitioner wife to be in Florida. Jurisdiction of this court is on an in rem basis, deriving from the domiciliary status of the tort-feasor who caused the wrongful death. Although the recovery of the wrongful death proceeds was accomplished under New York law, the petitioner has requested the court to consider the propriety of applying the law of Florida to the distribution of the proceeds of the settlement. This request has a rational and sound basis when we consider same in light of the domicile and interests of decedent’s distributees.
Both the decedent and his family had recent roots in New York, although at the time of his death they were all residents of Florida. It appears that decedent, who was an employee of New York Telephone Company, was living temporarily with his mother in New York, pending completion of his job transfer to the Florida Bell Telephone Company. He and his wife had purchased a home in Florida the previous year and the wife and seven children were living there at the time of decedent’s death. It appears also that at the time of decedent’s accident and his admission to the hospital, his job transfer application had been approved and his personnel records were being transferred to Florida.
In the case of Babcock v Jackson (12 NY2d 473), the Court of Appeals examined a number of cases wherein the court applied the law of a jurisdiction other than the place of a tort because it had a more compelling interest in the application of its law to the legal issue involved. As a result of this examination, the Court of Appeals came to the conclusion that the traditional rule that substantive rights and liabilities are invariably determinable by the law of the place of the tort should be discarded in favor of a more accommodating and practical doctrine of "center of gravity” or "grouping of contacts”. The court then went on to state (pp 481-482): "The 'center of gravity’ or 'grouping of contacts’ doctrine adopted by this court in conflicts cases involving contracts impresses us as likewise affording the appropriate approach for accommodating the competing interests in tort cases with multiState contacts. Justice, fairness and 'the best practical result’ (Swift & Co. v. Bankers Trust Co., 280 N. Y. 135, 141, supra) may best be achieved by giving controlling effect to the law of
*355 the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation. The merit of such a rule is that 'it gives to the place "having the most interest in the problem” paramount control over the legal issues arising out of a particular factual context’ and thereby allows the forum to apply 'the policy of the jurisdiction "most intimately concerned with the outcome of [the] particular litigation.” ’ (Auten v. Auten, 308 N. Y. 155, 161, supra).”
The rationale of the foregoing doctrine was followed in Miller v Miller (22 NY2d 12, 15-16) wherein the Court of Appeals stated: "the rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.”
In the Matter of Caccamo (71 Misc 2d 391), the learned Surrogate logically extended and applied this doctrine to a wrongful death action arising when the automobile in which decedent was a passenger and which was registered in Connecticut, collided in Connecticut with a truck registered in Connecticut but owned by a New York corporation. In that case, decedent, a resident of Nevada, was survived by a wife and four infant children, also residents of Nevada, and two adult children who were residents of Connecticut. After isolating the "distribution” aspects from the "recovery” aspects, the court went on to state (p 395): "It is determined that the choice of law made by this court, also a forum court, on the 'distribution’ aspects is not compelled or need not be influenced by the choice made by the trial court on the 'recovery’ aspects. Many of the New York cases heretofore cited have applied different 'choice of law’ principles to separate particular issues in the same action. (See, also, Matter of Clark, 21 NY 2d 478; Matter of Crichton, 20 N Y 2d 124.) It is repeated that for the purpose of arriving at a choice of law, the 'particular issue’ of distribution of damages may be isolated from the issue of recovery of damages — as the latter has been from issues of limitation of damages, interspousal immunity and guest statutes. (See Restatement, 2d, Conflict of Law, § 175; Miller v. Miller, 22 N Y 2d 12, 15-16, supra.)” In holding that the predominant governmental interest was that of the State containing the people to receive the damages recovered *356 and that the Nevada distribution statute should apply, the court stated (p 394): "It seems logical in this instance to conclude that Nevada is the State most vitally concerned with the manner in which the widow and infant children of a Nevada decedent will be compensated for their pecuniary loss resulting from the wrongful death of their breadwinner.”
In the instant case, it is undisputed that decedent and his family had purchased a home in Florida, that the family was residing in Florida at the time of decedent’s injury and death and that decedent was only marking time in New York pending completion of his job transfer. In view of the established choice of law rules hereinabove set forth, this court is of the opinion that the jurisdiction having the most significant and predominant relationship for purposes of distribution of the recovery proceeds herein is the State of Florida.
Having determined that the law of the State of Florida applies with respect to the distribution of the recovery proceeds, the court will now inquire into and determine the relative amounts of such distribution. Unlike our New York law which restricts the recovery and distribution of wrongful death proceeds to pecuniary damage and the number of years of reasonable expectation of support (EPTL 5-4.4; Matter of Kaiser, 198 Misc 582), section 768.21 of the Florida wrongful death act, effective July 1,1972, permits recovery and compensation to each survivor for the value of lost support and services (subd [1]) and goes on to state: "(2) The surviving spouse may also recover for loss of the decedent’s companionship and protection and for mental pain and suffering from the date of the injury” and, continues "(3) Minor children of the decedent may also recover for lost parental companionship, instruction and guidance and for mental pain and suffering from the date of the injury.”
In justification of her requested distributive share, petitioner alleges her total reliance on decedent, not only for financial support, but also for running and maintaining their home, a burden she must now continue alone. This is covered by section 768.18 of the Florida statute, which defines the term "services”, referred to in subdivision 1 hereinabove, as "tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense to the survivors of the decedent.” As for the children, the percentages of distribution requested for each of the seven infants varies from 12% for the youngest child of two years to 8% for the *357 oldest child 12 years of age. Despite the great difference in ages, the relatively slight differential in percentages is based on the premise that it is precisely because the older children had enjoyed a few years with their father and had gotten to know him that their loss would be more personal and more painful and the loss of companionship more keenly felt.
In support of her proposed distribution under Florida law, petitioner has submitted an affidavit from a Florida attorney with an extensive practice and specialization involving the defense of negligence actions, including actions for wrongful death. It appears from this supporting affidavit and from the case law previously submitted by petitioner’s attorney (Smyer v Gaines, 332 So 2d 655 [Fla]; Nat Harrison Assoc. v Byrd, 256 So 2d 50 [Fla]) that the distribution of the proceeds of wrongful death actions in Florida does not follow any fixed schedule based on age and life expectancy, but instead the guidelines are subjective in nature, with the court, in each case, making an independent determination of the proper apportionment depending upon the facts of each situation. Accordingly, this court has carefully considered and evaluated each of the elements or factors in the instant case to be considered under Florida law, including loss of support, services, companionship, protection, marital relations, station in society and mental pain and suffering and concludes that the reduced percentages of distribution set forth and recommended in the report of the guardian ad litem are fair and equitable and distribution shall be made in accordance therewith.
The guardian ad litem, appointed by the court to represent and protect the interests of the seven infant children, has recommended approval of the proposed settlement, but has referred the question of attorneys’ fees for the court’s consideration and decision. Mindful of its duty to protect the infants’ interests, the court has carefully reviewed the attorneys’ affidavits detailing the legal services performed, in order to determine a reasonable counsel fee. Petitioner’s attorneys have done a competent job, and with respect to that part of the recovery accruing to the benefit of the petitioner widow, the court will allow the agreed counsel fee of 3310%, based on the retainer agreement executed by the parties. However, as to that part of the recovery accruing to the benefit of the infants, the court will allow attorneys’ fees in a sum equal to 25% of said infants’ share of the settlement. Such compensation shall cover all legal services, including the preparation, *358 entry and execution of the decree hereon and shall be computed on the basis of the net amounts recovered, after deduction of the legal disbursements from the gross amount of the recovery. In addition to the foregoing, the attorneys are allowed the sum of $4,510.56 as and for legal disbursements expended by them.
From the proceeds of the recovery, the petitioner is authorized to reimburse herself in the amount of $3,244.78 for advancing payment of decedent’s funeral expenses. In accordance with EPTL 5-4.4 (subd [b]), payment of commissions is allowed on the net recovery.
After payment of the legal fee and disbursements of petitioner’s attorneys, the payment of the guardian ad litem’s compensation, the reimbursement to petitioner for funeral expenses and payment of petitioner’s commissions, the net proceeds remaining shall be distributed to petitioner and her seven children under the Florida wrongful death act, in accordance with the percentages in the guardian ad litem’s report.