Chief Judge Cooke
(dissenting). In my view, this court’s decision in Matter of Clark (21 NY2d 478) is dispositive of the question whether EPTL 3-5.1 (subd [h]) permits a nondomiciliary to elect in her will to apply New York law so as to avoid the forced heirship provisions of the law of her domicile at the time of death. Inasmuch as the majority adopts the position that such an election can be made, I am compelled to dissent.
Jane Renard, the deceased, was born in France in 1899. She came to New York in 1941, became a United States citizen in 1965, and remained domiciled here until 1971, when she returned to France. In 1972, decedent executed a will at the Paris office of the New York law firm of Sullivan & Cromwell, where she had been employed while in New York. She died a French domiciliary in 1978, survived by her adopted son Philip, a citizen of both France and the United States and who was domiciled in California.
Decedent left her Paris apartment and its furnishings to Philip. The remainder of the estate, bank and brokerage accounts in New York, went to a friend and a French charity, respondent Societe d’Entraide des Membres de la Legion d’Honneur (Societe). The will provided: “I hereby declare that I elect that this‘Will shall be admitted to original probate in the State of New York and shall be construed and regulated by the laws of the State of New York, and that the validity and effect thereof shall be determined by such laws.” Arthur H. Dean, a member of the New York Bar, and the Bank of New York were named as executors.
*976 The instrument was admitted to original probate in the Surrogate’s Court of New York County, after which the executors petitioned for an order for distribution of decedent’s New York property in accordance with New York law. Philip filed an objection, claiming his right under French law as surviving child to one half of decedent’s estate. Respondents Societe and the executors resisted Philip’s claim, urging that effect should be given to Jane Renard’s election to apply New York law as authorized by EPTL 3-5.1 (subd [h]).[1] The Surrogate granted the application to permit distribution according to the terms of the will. The court concluded that EPTL 3-5.1 (subd [h]) permitted the election and that Matter of Clark (21 NY2d 478, supra), construing that section’s predecessor to be without effect as to a widow’s right of election, was distinguishable as involving different statutory language. Alternatively treating the question as one of choice of law, the Surrogate determined that New York’s interest in testamentary freedom was paramount and thus its law should apply. A majority of this court adopts the former reasoning. I am unpersuaded.
In Matter of Clark (id., at p 481), this court faced the question whether a nondomiciliary husband, “by selecting New York law to regulate his testamentary dispositions, [could] cut off or otherwise affect the more favorable right given his widow to elect by the law of their domicile?” The Clark will satisfied New York’s right of election but did not satisfy that right under the law of Virginia, the couple’s domicile. The will provided that “this Will and the testamentary dispositions in it and the trusts set up shall be construed, regulated and determined by the laws of the State of New York.” The last sentence of section 47 of the *977 Decedent Estate Law, the predecessor to EPTL 3-5.1 (subd [h]), provided that whenever a nondomiciliary “shall have declared in his will that he elects that such testamentary dispositions shall be construed and regulated by the laws of this state, the validity and effect of such dispositions shall be determined by such laws.”
In holding that the surviving spouse could assert the Virginia right of election, then Chief Judge Fuld stated that “the language of the statute, as well as its legislative history and the policy to be served by it, clearly demonstrates that the words ‘testamentary dispositions’ and ‘the validity and effect of such dispositions’ do not encompass the right accorded a spouse to elect to take in opposition to the will.” (21 NY2d, at p 483.) The court further noted that “[u]nlike the expressions of intent which constitute testamentary dispositions, the right of election, both in Virginia and New York, is statutory in nature and exists wholly outside of, and in direct contravention to, the provisions of a will * * *. [T]he widow’s right of election * * * is not a ‘testamentary disposition’ whose validity and effect may be controlled by the provisions of a will under section 47 * * *. [F]ar from being a testamentary disposition, is a ‘restriction on the right [of the decedent] to make [such] a * * * disposition.’ ” (Id., at p 484.)
The explicit import of Clark is that section 47 had no effect on restrictions placed on a decedent’s testamentary power — “for instance, to disinherit his spouse or other members of his family”, but goes only to “discerning and carrying out the testator’s wishes and desires.” (Id., at p 484.)
Particularly significant here is that court’s observation that section 47 had been replaced since the testator’s death “by a very similar provision”, EPTL 3-5.1 (subd [h]) {id., at p 482). Unlike the majority, I am unwilling to avoid the impact of this observation by characterizing it as a mere dictum and am unable to discern any critical distinction between the current statute and its predecessor. The language and legislative history of EPTL 3-5.1 (subd [h]) make clear that the statutes are indistinguishable on the question presented here.
*978 The Surrogate opined that the Clark analysis of section 47 was inapplicable to EPTL 3-5.1 (subd [h]) because section 47 permitted an election of New York law to govern only “testamentary dispositions” while EPTL 3-5.1 (subd [h]) permits such designation “to govern The disposition of [decedent’s] property situated in this state’ ”, a phrase the Surrogate found “broad enough, as a matter of plain meaning, to apply to all property passing as a result of a decedent’s death.” (108 Mise 2d 31, 37.) The language relied on, however, does not define the scope of subdivision (h). EPTL 3-5.1 (subd [h]) by its terms is concerned only with testamentary dispositions. The testator’s election under subdivision (h) to have New York law govern “the disposition of his property situated in this state” relates to determining, among other things, the “intrinsic validity” and “effect” of “any such disposition”, both of which expressly concern “testamentary disposition^]” (EPTL 3-5.1, subd [a], pars [4], [5]). Thus, nothing in the language of EPTL 3-5.1 supports the view that it is to be read more broadly than its predecessor, section 47.
Nor does the legislative history of EPTL 3-5.1, deemed controlling by the Surrogate, justify disregarding Clark as precedent. It is true that, but for Clark, portions of the Fifth Report to the Legislature of the Temporary State Commission on Modernization, Revision and Simplification of the Law of Estates (Report) (NY Legis Doc, 1966, No. 19) lend support to the construction of EPTL 3-5.1 adopted by the majority.[2] But the Report relies on section 47 as embodying the principle that nondomiciliaries can avoid restrictions on testamentary dispositions (Report, at p 636), a conclusion expressly rejected later by the Clark court when it construed that section. EPTL 3-5.1 (subd [h]) merely “re-enacted[ed] the last sentence of DEL § 47 with changes in form keyed to the drafting pattern of the new *979 law” (Revisers’ Notes, McKinney’s Cons Laws of NY, Book 17B, EPTL'3-5.1, p 620 [emphasis added]; see, also, Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 3-5.1, p 610 [subdivision (h) “restates, without change, the substance of the last sentence in section 47”]). It is evident then that section 47 of the Decedent Estate Law was the cornerstone for EPTL 3-5.1. And, inasmuch as no substantive change between the two was intended by the Legislature or reflected in the statutory language, it is equally evident that the Clark court’s construction of section 47 as having no application to rights existing “wholly outside of, and in direct contravention to, the provisions of a will” (21 NY2d, at p 484) must be reflected in the construction of EPTL 3-5.1 (subd [h]). EPTL 3-5.1, therefore, can have no greater impact on such rights than did section 47.
The majority’s apparent dissatisfaction with the Clark holding does not justify the decision here. The Clark decision, with its implications for EPTL 3-5.1, has been left undisturbed since 1968 by the Legislature, despite the ready means available to that body to correct any perceived misinterpretation of its intent (see Matter of Higby v Mahoney, 48 NY2d 15, 18; People v Hobson, 39 NY2d 479, 489). As this court has noted: “Generally, once the courts have interpreted a statute any change in the rule will be left to the Legislature, particularly where the courts’ interpretation is a long standing one” (Matter of Eckart, 39 NY2d 493, 499-500). Stability in judicial pronouncements is particularly important when the nature of the question involved rules concerning the transfer of property or testamentary dispositions (id., at p 500). Unless it can be shown that the result in the prior case “is clearly erroneous or disruptive of the legislative purpose” (id., at p 502) any change should come from the Legislature. No such showing has been made here.
The forced heirship under French law, like the spouse’s right of election, operates against the will, contravening the testator’s expressed intent. Like the right of election, the forced heirship is not a testamentary disposition and cannot be adversely affected by the testator’s unilateral decision under EPTL 3-5.1 (subd [h]) to designate New *980 York law to govern (see Matter of Clark, 21 NY2d 478, 484, supra).[3]
Effectively overruling Matter of Clark, the majority today drastically alters the law relating to a nondomiciliary’s testamentary disposition of property located in New York. Not only may a forced heirship be avoided by a choice-of-law clause, but so may any right accorded by the law of the domicile protective- of persons surviving the decedent, including any spousal right of election more favorable than that accorded by New York. No sound jurisprudential or other policy reason has been articulated for such a result. I would adhere to Matter of Clark and hold EPTL 3-5.1 inapplicable to a forced heirship claim. I, therefore, respectfully dissent.
Order affirmed, etc.

. EPTL 3-5.1 (subd [h]) provides: “Whenever a testator, not domiciled in this state at the time of death, provides in his will that he elects to have the disposition of his property situated in this state governed by the laws of this state, the intrinsic validity, including the testator’s general capacity, effect, interpretation, revocation or alteration of any such disposition is determined by the local law of this state.” The terms “intrinsic validity” and “effect” are defined as follows: “ ‘Intrinsic validity’ relates to the rules of substantial law by which a jurisdiction determines the legality of a testamentary disposition, including the general capacity of the testator” (EPTL 3-5.1, subd [a], par [4]); “ ‘Effect’ relates to the legal consequences attributed under the law of a jurisdiction to a valid testamentary disposition” (EPTL 3-5.1, subd [a], par [5]).

. That Report noted that the term “ ‘effect’ involves the legal consequences that flow from an otherwise valid provision of a will, such as the effect of * * * exclusion of a surviving spouse from testamentary benefits and the like” (Report, at p 630). The Report (at p 636) also referred to Matter of Cook (204 Misc 704, 705, affd 283 App Div 1047), which sustained the validity of the election provision in section 47 and held that the statute “affords residents of other jurisdictions a means of escaping onerous restrictions on the testamentary disposition of property imposed by the laws of their own domiciles.”

. Equally unpersuasive is the argument that New York otherwise has a sufficient interest in protecting or regulating the rights of the nondomiciliaries before the court to justify disregarding the applicable French law. EPTL 3-5.1 (subd [b], par [2]) establishes the rule that, subject to subdivision (h), the “law of the jurisdiction in which the decedent was domiciled at death” determines the validity and effect of testamentary dispositions of personal property. Additionally, as was observed by the Clark court, the law to be invoked is that of the place that “has the predominant, if not the sole, interest in the protection and regulation of the rights of the person or persons involved” (21 NY2d 478, 486). A State does not obtain a sufficient interest when it is merely the place where the property is located rather than the domicile (id.). In this case the testatrix was domiciled in France and executed the will there. Philip, the objectant, is a French citizen, albeit domiciled in California, and the testamentary dispositions affect French beneficiaries. It seems clear that France has the only real and substantial interest in this controversy. Indeed, the only significant contact with New York is the presence of both the assets and the executors. That is not enough.