*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of<br><br>PAUL ARTHUR BENTLEY. | )<br>) Supreme Court No.: S-17944<br>)<br>) Superior Court No.: 3AN-17-03290 PR<br>)<br>) O P I N I O N<br>)<br>) No. 7720 – September 20, 2024<br>)<br>) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Tonja Woelber, Woelber & Associates, P.C., Anchorage, for Eleanor Haynes. Brian Riekkola and Harrison Kerth, North Star Law Group, LLC, Anchorage, for National Kidney Foundation.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

BORGHESAN, Justice.

## I.    INTRODUCTION

This appeal arises out of a will dispute. The man who made the will (the testator) was domiciled in Washington at the time of his death. His will provides that it shall be administered according to Alaska law. Yet the superior court applied Washington law to determine the share of the testator's surviving spouse, whom he

married after the will was executed. The surviving spouse appeals, arguing the superior court misapplied the Alaska probate code's choice-of-law statute.

Because Alaska law permits the testator to choose Alaska law to govern the will's interpretation and effect, and because the rights of a surviving spouse who married the testator after the will was executed concern the will's interpretation and effect, Alaska law governed the surviving spouse's rights. We therefore reverse the superior court's decision and remand for application of Alaska law.

## II. FACTS AND PROCEEDINGS

### A. Facts

Paul Bentley and Eleanor Haynes first married in 1989 in Washington and divorced a few years later. They did not have children together. After their divorce, they remained in contact. Haynes later remarried, but Bentley did not.

After Haynes divorced her second spouse, she and Bentley became close again. At that time Haynes lived in Washington and Bentley lived in Seward. They began flying to visit each other and vacationed together in Mexico and Hawaii.

Bentley received a kidney transplant, which compromised his immune system and eventually led to skin cancer and other health complications. In May 2017 Bentley and Haynes met with an attorney in Anchorage about drawing up a will for Bentley. Bentley signed the will in August. The will devised some property to Haynes, some property to his brother, and the residuary of the estate to the National Kidney Foundation (NKF). The will nominated Haynes as personal representative and directed the personal representative "to administer [Bentley's] estate in accordance with the provisions of the Uniform Probate Code, as codified and amended by the Alaska statutes."

In October 2017 Bentley developed kidney failure. That month Bentley flew to Washington to stay with Haynes while he received treatment. After some complications Bentley was hospitalized in November. Bentley spent three days in the hospital on dialysis, then elected to stop treatment on November 17. That same day

Bentley asked Haynes what she wanted "for Christmas." She responded that she wanted to marry him. The two obtained a marriage license, waited the legally required 48 hours, and then were married by a hospice chaplain on November 20. Bentley died the next day.

## B. Proceedings

Haynes was appointed as personal representative of Bentley's estate in January 2018. Haynes hired one attorney to represent her in her role as personal representative and another attorney to represent her personally as the surviving spouse and beneficiary. Haynes filed an inventory showing that the total value of Bentley's estate was $1,822,867.

Haynes then filed a notice claiming three statutory allowances[1] and a demand for the elective share payable to a surviving spouse.[2] Haynes also took the position that as an after-married spouse, she was entitled to Bentley's entire estate under the provisions of AS 13.12.301.[3] NKF, the residuary beneficiary of Bentley's estate,

---

[1]    AS 13.12.402 (providing homestead allowance for surviving spouse); AS 13.12.403 (providing exempt property of up to $10,000 for surviving spouse); AS 13.12.404 (providing family allowance for maintenance during period of administration); AS 13.12.405 (providing source, determination method, and documentation method for property used to satisfy homestead allowance, exempt property, and family allowance).

[2]    AS 13.12.202. A "surviving spouse" is a spouse who was legally married to the decedent at the time of death. *See Riddell v. Edwards*, 76 P.3d 847, 854 (Alaska 2003). Under some circumstances Alaska law allows a surviving spouse to receive an intestate share of the estate. AS 13.12.102. But a surviving spouse who marries after the decedent executes his or her will — what we refer to as an "after-married spouse" — will not receive an intestate share under certain circumstances. *See* AS 13.12.301.

[3]    Alaska Statute 13.12.301 provides:

(a) If a testator's surviving spouse married the testator after the testator executed the testator's will, the surviving spouse

opposed Haynes's petition, arguing that Haynes was not entitled to inherit as an after-married spouse because she did not meet the statutory criteria.

Haynes moved for partial summary judgment on her rights as an after-married spouse. NKF opposed Haynes's motion and cross-moved for summary judgment. NKF argued that Washington law, not Alaska law, governed the issue because Bentley was domiciled in Washington when he died. It argued that under Washington law, Haynes was not entitled to inherit as an after-married spouse.[4] Haynes filed a reply, opposing NKF's choice-of-law argument. She argued that because Bentley's will asserted he was a resident of Alaska and directed his personal

---

is entitled to receive, as an intestate share, no less than the value of the share of the estate the surviving spouse would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised to a descendant of such a child or passes under AS 13.12.603 or 13.12.604 to such a child or to a descendant of such a child, unless

(1) it appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse;

(2) the will expresses the intention that it is to be effective notwithstanding a subsequent marriage; or

(3) the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.

*See also* AS 13.12.102(a)(1) ("[T]he intestate share of a decedent's surviving spouse is . . . the entire intestate estate if . . . no descendant . . . survives the decedent . . . .").

[4] Wash. Rev. Code (RCW) § 11.12.095(1) (granting after-married spouse intestate share if "will fails to name or provide for" spouse married after will's execution).

representative to apply Alaska law, Alaska law should apply to determine her rights as an after-married spouse.

The superior court held a hearing to determine Bentley's domicile at death. It ruled that Bentley was domiciled in Washington at death. Then it ruled that Alaska law would govern the "intrinsic validity" of the will and Washington law would govern the "formal validity," citing the choice-of-law provision in Alaska's probate code, AS 13.06.068.[5]

NKF then filed a motion arguing that Haynes was not entitled to inherit as an after-married spouse under Washington law.[6] Haynes opposed. She argued that her right to inherit as an after-married spouse was a matter of the will's "intrinsic validity" governed by Alaska law and that under Alaska law she was entitled to inherit the estate. Alternatively she argued that she qualified as an omitted spouse under Washington law.[7] The superior court agreed with NKF that Washington law controlled, and therefore Haynes could not inherit as an after-married spouse under Alaska law.

In December 2020 Haynes appealed the order to us and moved for the superior court to stay proceedings pending our decision in this appeal.

---

[5] AS 13.06.068(b) ("Subject to the other provisions of this section, the intrinsic validity, effect, revocation, or alteration of a testamentary disposition of personal property and the manner in which the property devolves at death when not disposed of by will are determined by the law of the jurisdiction in which the decedent was domiciled at death."); AS 13.06.068(i) ("When a testator, who is not domiciled in this state at the time of death, provides in the testator's will that the testator elects to have the disposition of the testator's property situated in this state governed by the local law of this state, the intrinsic validity, including the testator's general capacity, effect, interpretation, revocation, or alteration of the provision, is determined by the local law of this state. The formal validity of the will is determined under (b) of this section.").

[6] *See* RCW 11.12.095.

[7] She also argued that if the court applied Washington law she would be entitled to Washington's statutory allowance for a surviving spouse. *See* RCW 11.54.010.

After a motion from NKF, followed by opposition and reply, the superior court granted NKF prevailing party status in February 2021. Haynes moved for reconsideration, arguing that granting prevailing party status was premature because two major issues had not yet been decided: (1) Haynes's claim for spousal statutory allowance under Washington law, and (2) Haynes's right to inherit as an after-married spouse under Washington law.

In July 2021 the superior court issued an order on Haynes's two remaining claims. First, it ruled that Haynes was entitled to $125,000 as a statutory spousal allowance under Washington law.[8] Second, it ruled that she was not entitled to inherit as an after-married spouse under Washington law.

Haynes and NKF both moved for attorney's fees. The superior court granted NKF's motion, awarding $100,757 in fees against Haynes in her individual capacity. It denied Haynes's motion for fees.

In February 2022 the superior court issued a final proposed order but stayed its execution pending our final decision in this appeal.

Haynes appeals, arguing that the superior court erred by applying Washington law to her after-married spouse claim. She also appeals the court's analysis of Washington law and several aspects of its attorney's fees award.

## III. STANDARD OF REVIEW

Deciding whether Washington or Alaska law applies to Haynes's claim entails interpreting the choice-of-law statute in Alaska's probate code. Statutory interpretation is a question of law we review de novo.[9] "The objective of statutory construction is to give effect to the intent of the legislature, with due regard for the

---

[8] Haynes later moved for a retroactive increase of the statutory allowance to $329,500 due to a recent change in the applicable Washington law. *See* RCW 6.13.030. The court granted Haynes's motion.

[9] *Cox v. Est. of Cooper*, 426 P.3d 1032, 1035 (Alaska 2018).

meaning that the statutory language conveys to others."[10]  We use a "sliding scale approach to statutory interpretation."[11]  The " 'plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be' to overcome that plain meaning."[12]

## IV.  DISCUSSION

The question in this appeal is whether Washington or Alaska law applies to determine Haynes's rights as an after-married spouse.  The answer is found in the Alaska probate code's choice-of-law statute, AS 13.06.068.  This statute allows testators domiciled in other states to choose Alaska law to govern the "effect" and "interpretation" of the will's disposition of property located in Alaska.[13]  Bentley so chose.  Because Alaska's after-married spouse statute, AS 13.12.301, controls the effect and interpretation of a will when the testator later gets married, Haynes's rights to Bentley's Alaska property are governed by AS 13.12.301 — not by the comparable provision in Washington law.

Alaska's probate code contains a detailed choice-of-law statute, AS 13.06.068.  Two of the statute's provisions are key to this case.  Subsection (b) lays out the general rule:

> Subject to the other provisions of this section, the intrinsic validity, effect, revocation, or alteration of a testamentary disposition of personal property and the manner in which the property devolves at death when not disposed of by will are

---

[10]     *State, Dep't of Fam. & Cmty. Servs., Off. of Child.'s Servs. v. Karlie T.*, 538 P.3d 723, 729 (Alaska 2023) (quoting *Cora G. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 461 P.3d 1265, 1277 (Alaska 2020)).

[11]     *Basey v. State, Dep't of Pub. Safety, Div. of Alaska State Troopers, Bureau of Investigations*, 462 P.3d 529, 535 (Alaska 2020).

[12]     *Id.* (quoting *Mat-Su Valley Med. Ctr., LLC v. Bolinder*, 427 P.3d 754, 763 (Alaska 2018)).

[13]     AS 13.06.068(i).

determined by the law of the jurisdiction in which the decedent was domiciled at death.[14]

Subsection (i) provides an exception. It allows the testator some ability to choose Alaska law to govern the disposition of property located in Alaska even if the testator is not domiciled in Alaska at the time of death:

> When a testator, who is not domiciled in this state at the time of death, provides in the testator's will that the testator elects to have the disposition of the testator's property situated in this state governed by the local law of this state, the intrinsic validity, including the testator's general capacity, effect, interpretation, revocation, or alteration of the provision, is determined by the local law of this state. The formal validity of the will is determined under (b) of this section.[15]

Relying on these provisions, Haynes argued to the superior court that she was entitled to inherit as an after-married spouse under Alaska law. Conversely, NKF argued that subsection (b) directed the court to apply the law of Bentley's domicile at death — Washington.

In applying AS 13.06.068, the superior court ruled that Alaska law would govern the "intrinsic validity" of the will and that Washington law would govern the "formal validity." After further proceedings, the superior court agreed with NKF that Haynes's rights as an after-married spouse were a matter of "formal validity" governed by Washington law.

Many of the parties' arguments on appeal are oriented around the framework adopted by the superior court: whether the statutory provision for an after-married spouse is a matter of "intrinsic validity" or "formal validity."

Haynes points to the definition of "intrinsic validity," which the code describes as "the rules of substantive local law by which a jurisdiction determines the

---

[14]    AS 13.06.068(b).

[15]    AS 13.06.068(i).

legality of a testamentary disposition, including the general capacity of the testator."[16] She argues that the after-married spouse statute is substantive law and is therefore governed by the law of the testator's choice.

NKF argues that the after-married spouse issue is not a matter of intrinsic validity. Instead it argues that the issue pertains to formal validity — and is therefore governed by the state of domicile — because it relates to an intestate claim and not a testamentary disposition. NKF first observes that the code's definition of "intrinsic validity" refers to "testamentary disposition."[17] It therefore reasons that claims based upon something other than a testamentary disposition involve formal, not intrinsic, validity. NKF observes that Alaska's after-married spouse statute allows an after-married spouse to inherit a portion of the estate "as an intestate share" under certain circumstances.[18] Accordingly NKF argues that Haynes, by asserting her rights to "an intestate share,"[19] is asserting "claims made outside of the Will," rather than rights through a "testamentary disposition." Under NKF's interpretation this is a matter of "formal validity" governed by the law of the state of domicile at death, and therefore Washington law applies.

The parties' focus on the meaning of "intrinsic validity" is misplaced. This framing ignores the probate code's instruction that testators may choose Alaska law to govern "the intrinsic validity, including the testator's general capacity, *effect, interpretation, revocation, or alteration of the provision*."[20] In other words, "intrinsic

---

[16]    AS 13.06.068(*l*)(4) (" '[I]ntrinsic validity' means the rules of substantive local law by which a jurisdiction determines the legality of a testamentary disposition, including the general capacity of the testator.").

[17]    *Id.*

[18]    AS 13.12.301(a).

[19]    *Id.*

[20]    AS 13.06.068(i) (emphasis added).

validity" — which includes a testator's capacity to execute the will — is only one of several issues that a testator may choose to have governed by Alaska law. "Interpretation" is defined under AS 13.06.068 as "the procedure of applying the law of a jurisdiction to determine the meaning of language employed by the testator if the testator's intention is not otherwise ascertainable."[21] "Effect" is defined under AS 13.06.068 as "the legal consequences attributed under the local law of a jurisdiction to a valid testamentary disposition."[22] Under AS 13.06.068(i), a testator can choose Alaska law to govern the interpretation and effect of a will provision disposing of personal property located in Alaska.

Alaska's after-married spouse statute, AS 13.12.301, pertains to the interpretation and effect of a will when the testator subsequently marries. The statute creates a default rule that a surviving spouse is entitled to an intestate share, but then allows the testator to override this rule by making his or her intent clear.[23] In other words, the statute determines the effect of the will's express provisions. It also informs the court's interpretation of the testator's chosen language because it directs courts to consider whether the will was made in contemplation of marriage or was intended to be effective notwithstanding a subsequent marriage.[24]

---

[21] AS 13.06.068(*l*)(3).

[22] AS 13.06.068(*l*)(1).

[23] AS 13.12.301(a)(1)-(3) (providing that surviving after-married spouse is entitled to receive equivalent of intestate share unless: "(1) it appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse; (2) the will expresses the intention that it is to be effective notwithstanding a subsequent marriage; or (3) the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence").

[24] AS 13.12.301(a)(1)-(2).

The underlying policy of AS 13.06.068(i) is to allow testators to choose whether to have Alaska law govern the interpretation and effect of their wills.[25] It therefore seems likely the legislature intended to allow testators to choose Alaska law to determine how to carry out their wills if they later marry.

NKF points to language in AS 13.06.068(b) providing that the law of the decedent's domicile at time of death governs "the manner in which the property devolves at death when not disposed of by will." It observes that this language appears in AS 13.06.068(b) but not the exception in AS 13.06.068(i). It reasons that this omission was deliberate, indicating that the legislature intended to allow testators to select Alaska law to govern testamentary dispositions but not intestate claims. NKF further observes that Alaska's after-married spouse statute provides for recovery "as an intestate share."[26] It argues that Haynes's effort to recover under this statute seeks to challenge the transfer of property "when not disposed of by will" and therefore falls within the general rule that the law of domicile controls.

We read AS 13.06.068(b)'s reference to "the manner in which the property devolves at death when not disposed of by will" differently. This language seems meant to govern property that is disposed of by means other than a will, like joint bank accounts and retirement accounts subject to transfer-on-death provisions, or property of someone who dies intestate.[27] We do not think that AS 13.12.301's use of the term

---

[25] *See* Minutes, S. Labor & Com. Comm. Hearing on S.B. 354, 20th Leg., 2d Sess. (April 28, 1998) (explaining that the choice-of-law provision "change[s] Alaska law to permit a person who is domiciled outside of Alaska to select Alaska as the jurisdiction for the probate of their estate . . . [to] bring significant business to the state").

[26] AS 13.12.301(a).

[27] *See, e.g.*, AS 13.33.101 (describing transfer-on-death provisions in insurance policies, retirement plans, trusts, and deeds for transfer on death as "nontestamentary"); *In re Est. of Evanco*, 955 P.2d 525, 526-28 (Alaska 1998)

"intestate share" to describe an after-married spouse's share of property devised by will means that this property is "not disposed of by will" for purposes of AS 13.06.068(b). Rather, AS 13.12.301 creates a rule for interpreting the will's disposition of property when the testator later marries. The statute does not take the testator's property entirely outside the will. In some cases, such as when the will was made in contemplation of an impending marriage, applying the statute means the testator's property is distributed exactly as the testator devised.[28] Our reading of the statute creates a logical distinction between matters of "interpretation" and "effect"[29] of the will, which the testator can choose, and laws governing "the manner in which the property devolves at death when not disposed of by will,"[30] which the testator cannot choose because this property is not controlled by the will.

New York case law supports our interpretation. New York's probate choice-of-law statute is very similar to Alaska's.[31] Both provide that the law of the

---

(upholding distribution of stock certificates, jointly owned by decedent and another person, to surviving joint owner outside of probate).

[28]    AS 13.12.301(a)(1).

[29]    AS 13.06.068(i).

[30]    AS 13.06.068(b).

[31]    *Compare* AS 13.06.068(i) ("When a testator, who is not domiciled in this state at the time of death, provides in the testator's will that the testator elects to have the disposition of the testator's property situated in this state governed by the local law of this state, the intrinsic validity, including the testator's general capacity, effect, interpretation, revocation, or alteration of the provision, is determined by the local law of this state. The formal validity of the will is determined under (b) of this section."), *with* N.Y. Est. Powers & Trusts Law § 3-5.1(h) (McKinney 2024) ("Whenever a testator, not domiciled in this state at the time of death, provides in his will that he elects to have the disposition of his property situated in this state governed by the laws of this state, the intrinsic validity, including the testator's general capacity, effect, interpretation, revocation or alteration of any such disposition is determined by the local law of this state. The formal validity of the will, in such case, is determined in accordance with paragraph (c).").

testator's domicile at death generally controls disposition of personal property.[32]  The statutes also use similar language to describe when the testators can select a different jurisdiction's law.[33]  The New York statute was enacted in 1966, over three decades before Alaska's version was enacted.[34]

Our interpretation of the Alaska statute is similar to the interpretation adopted by New York's highest court in the 1982 decision *Estate of Renard*.[35]  In that case a woman relocated to France, leaving many of her assets in New York.[36]  Later she executed a will with a provision selecting New York law.[37]  After she died, her son sought rights to half of her estate's assets under a French forced heirship law.[38]  The New York court therefore faced an issue similar to the one presented to us in this case — whether to apply the law of domicile or to enforce the will's choice of law.[39]  The court enforced the will and applied New York law.[40]  In doing so, the court looked to a report from the commission that drafted the New York statute.[41]  That report explained that the term "effect" as used in the statute "involves the legal consequences that flow from an otherwise valid provision of a will, such as . . . the exclusion of a surviving

---

[32]    *See* AS 13.06.068(b); N.Y. Est. Powers & Trusts Law § 3-5.1(b)(2).

[33]    *See* AS 13.06.068(i); N.Y. Est. Powers & Trusts Law § 3-5.1(h).

[34]    *See* Ch. 105, § 1, SLA 1998; 1966 N.Y. Laws 2780-82.

[35]    *See In re Est. of Renard*, 437 N.Y.S.2d 860 (N.Y. Sur. 1981), *aff'd*, 447 N.Y.S.2d 573 (N.Y. App. Div. 1981), *aff'd*, 439 N.E.2d 341 (N.Y. 1982).

[36]    *Id.* at 861-62.

[37]    *Id.* at 862.

[38]    *Id.*

[39]    *Id.*

[40]    *Id.* at 863-67.

[41]    *Id.* at 863-64.

spouse from testamentary benefits and the like."[42] Based on this legislative history, and the statute's broad directive to allow testators to select New York law "to govern 'the disposition of [their] property situated in this state,' " the court concluded that the will's choice of law, and not the law of domicile, governed.[43] The testator's heir sought review from the New York Court of Appeals, which affirmed without separate opinion.[44]

NKF argues that *Estate of Renard* is unpersuasive authority. First, NKF points to a lack of evidence in the legislative history indicating that the Alaska statute was modeled on New York law. We acknowledge NKF's point, but neither party suggests a different plausible model for Alaska's similarly worded statute, nor have we found any. Given the striking similarity between New York and Alaska law, we view New York case law as a persuasive guide to our legislature's intent.

Second, NKF argues that to the extent New York law does impact our analysis, an earlier New York case — *In re Estate of Clark*[45] — is more persuasive. We disagree. *Estate of Clark* interpreted a superseded statute and is unpersuasive in light of the discussion in *Estate of Renard*.

In *Estate of Clark* the New York Court of Appeals decided whether a testator who selected New York law in his will had precluded his wife from seeking a spousal share under Virginia law.[46] Most of the testator's personal property was in New

---

[42] *Id.* at 863 (omission in original).

[43] *Id.* at 864 (quoting N.Y. Est. Powers & Trusts Law § 3-5.1(h)); *cf.* AS 13.06.068(i) (similarly allowing testators to select Alaska law for "the disposition of the testator's property situated in this state" under certain circumstances).

[44] *See In re Est. of Renard*, 439 N.E.2d 341 (N.Y. 1982).

[45] *In re Est. of Clark*, 236 N.E.2d 152 (N.Y. 1968).

[46] *See id.* at 153.

York, but he died domiciled in Virginia.[47]  The choice-of-law statute at issue in *Estate of Renard* did not apply because the testator had died before it took effect.[48]  Under an earlier choice-of-law statute, testators could select New York law only with respect to "testamentary dispositions."[49]  The court's reasoning in *Estate of Clark* hinged on this language — Virginia law controlled because a spousal right to elect was not a "testamentary disposition."[50]

But the court in *Estate of Renard* persuasively dismissed *Estate of Clark*. It concluded that "[n]one of the[] reasons for the [prior] court's conclusion" applied to the new statute.[51]  The Court of Appeals affirmed this decision over a dissent that reiterated the reasoning in *Estate of Clark*.[52]  Thus, some commentators have suggested that *Estate of Renard* impliedly overruled *Estate of Clark*.[53]  The Alaska legislature did not enact AS 13.06.068(i) until well after the decision in *Estate of Renard*.[54]  We are therefore unconvinced that the Alaska legislature intended to incorporate the holding of *Estate of Clark*, which was arguably bad law when the legislature passed AS 13.06.068.

In sum, a testator may choose Alaska law to govern the effect and interpretation of the will with regard to property located in Alaska.  Alaska's after-married spouse statute determines the interpretation and effect of a will when the testator subsequently marries.  When Bentley chose to have his will administered under

---

[47]  *Id.*

[48]  *Id.* at 154 & n.2.

[49]  *See id.*

[50]  *Id.* at 154-55.

[51]  *In re Est. of Renard*, 437 N.Y.2d 860, 864-65 (N.Y. Sur. 1981), *aff'd*, 447 N.Y.S.2d 573 (N.Y. App. Div. 1981), *aff'd*, 439 N.E.2d 341 (N.Y. 1982).

[52]  *In re Est. of Renard*, 439 N.E.2d at 341, 343-44.

[53]  *See* N.Y. Est. Powers & Trusts Law § 3-5.1 cmt. (McKinney 2024).

[54]  *See* Ch. 105, § 1, SLA 1998.

Alaska law, he chose Alaska law to govern his will in the event he later married. Accordingly we reverse the superior court's decision to apply Washington law to this issue and remand for it to apply Alaska law.[55]

## V.    CONCLUSION

We REVERSE the superior court's order applying Washington law to determine Haynes's recovery as an after-married spouse, VACATE the superior court's attorney's fee award, and REMAND for further proceedings consistent with this opinion.

---

[55]    Because we reverse on the choice-of-law issue, we do not address Haynes's arguments about the interpretation of Washington law, prevailing party status, the amount of attorney's fees, or who is liable for fees.